Anthony D. MARTENS et al., Appellant,

v.

GENERAL MOTORS ACCEPTANCE CORP., Appellee.

No. 19930.

Court of Civil Appeals of Texas, Dallas.

July 23, 1979.

Ben L. Krage, Kasmir, Willingham & Krage, Dallas, for appellant.

Arch A. Beasley, Jr., Biggers, Lloyd, Biggers, Beasley & Amerine, Dallas, for appellee.

Before GUITTARD, C. J., and STOREY and HUMPHREYS, JJ.

HUMPHREYS, Justice.

Appellants Anthony D. Martens and Richard E. Greenberg sued appellee General Motors Acceptance Corporation (GMAC), for statutory penalties, alleging that certain language in GMAC's retail installment contract violates the Texas Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. art. 5069–7.-07(4) (Vernon 1971). The Court granted GMAC's motion for summary judgment and denied Marten's motion for partial summary judgment. The issue is whether paragraph six of the GMAC contract violates article 5069–7.07(4), which prohibits waiver of buyer's rights of action against seller in installment contracts for illegal acts committed in the repossession of the vehicle. We hold that paragraph six does not violate the Code and affirm the trial court.

Martens and Greenberg bought and financed vehicles through GMAC installment contracts. Neither appellant has ever become delinquent in payments, appellee has not repossessed nor attempted to repossess either of these vehicles, and appellants' claim no actual damages. Article 5069–7.-07(4) of the Code provides:

No retail installment contract or retail charge agreement shall:

.   .   .   .   .

(4) Provide for a waiver of the buyer's rights of action against the seller or holder or other person acting therefor, for any illegal act committed in the *collection of payments* under the contract or agreement or *in the repossession of a motor vehicle*; (Emphasis added).

Paragraph six of the retail installment contract provides for the seller's remedies on default and states:

Further in any such event, seller or any sheriff or other officer of the law *may take immediate possession of said property without demand,* including any equipment or accessories thereto; and for this purpose *seller may enter upon the premises where said property may be and remove same.* Seller may take possession of any other property in the hereinbefore described motor vehicle at time of repossession, wherever such other property may be therein, and *hold same for buyer at buyer's risk without liability on the part of seller.* Such repossession shall not affect seller's right, hereby confirmed, to retain all payments made prior thereto by the buyer hereunder. (Emphasis added).

Appellants argue that paragraph six of the GMAC contract violates article 5069–7.-07(4) because it purports to waive the buyer's right to sue the mortgage holder for breaches of the peace and other illegal acts while repossessing the mortgaged motor vehicle. Appellants rely primarily on two cases involving installment contracts, *Southwestern Investment Co. v. Mannix,* 557 S.W.2d 755 (Tex.1977) and *Ford Motor Credit Co. v. Cole,* 503 S.W.2d 853 (Tex.Civ. App.—Fort Worth 1973, writ dism'd). *Mannix* involved the alleged violation of article 5069–6.05, which provides:

No retail installment contract or retail charge agreement shall:

.   .   .   .   .

(4) Provide for a waiver of the buyer's rights of action against the seller or holder or other person acting therefor for any illegal act committed in the collection of payments under the contract or agreement or in the repossession of goods;

The contract provision in *Mannix* was:

Nothing shall prevent the Secured Party from removing [the property] from any

premises to which same may be attached, upon default or breach of this Retail Installment Contract and Security Agreement or any part thereof, and the Debtor agrees to sustain the cost of repairs, if any, of any physical injury to the real estate caused by such removal.

557 S.W.2d at 763. The supreme court held that this provision waived a buyer's cause of action for a tort committed in the repossession of goods. The court stated that the legislature not only intended such contract provision to be unenforceable but also to penalize a creditor for including such a provision in an installment contract. The court stated that such provision:

> would deceive the very individuals the Legislature intended to protect; namely, "the uneducated, the unsophisticated, the poor and the elderly" into believing that their creditors could, with the law's blessing, forcibly enter their homes at any time of the day or night and remove their goods without any concern for damages to the debtor's real property.

557 S.W.2d at 763.

*Cole* was a venue case involving the repossession of a vehicle under this provision:

> Time is of the essence of this contract. In the event Buyer defaults in any payment . . . Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable and Seller shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code, V.T.C.A. including the right to repossess the Property wherever the same may be found with free right of entry, and to recondition and sell the same at public or private sale.
>
> . . . Any personalty in or attached to the Property when repossessed may be held by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession . . . . .

503 S.W.2d at 854–55.

The court held that the debtor was entitled to retain venue of the suit in Denton County for unlawful conversion based on a claim that the lender had retained certain items in the repossessed car. The court said that the debtor could maintain suit for conversion under the provision because:

> it would not be permissible to construe the language of the contract to permit Ford Motor Credit to be exempted from liability in the event it should convert unsecured property of its mortgagor. As so construed the contract would be unenforceable as contrary to the public policy of this state.

503 S.W.2d at 856.

■ The case here on appeal is distinguishable from *Mannix* and *Cole.* The provision in *Mannix* clearly allowed the lender to forcibly repossess the debtor's property. *Cole* did not involve the Consumer Credit Code. The court in *Cole* only stated that the contract provision would be unenforceable if construed to allow the lender to convert debtor's property. We hold that the language in this GMAC contract does not authorize illegal acts in repossession on the part of the vendor.

We agree with appellee that paragraph six does not allow a breach of peace in the repossession of the vehicle. Rather, it defines the bailor-bailee relationship in the event personal property not subject to the mortgage is in the vehicle when it is repossessed. The provision that "[s]eller may enter upon the premises where said property may be and remove same," does not waive any rights of the buyer. If a breach of peace is committed by the seller, the buyer has an action in tort.

■ The contract also provides that the seller can take possession of any other property inside the vehicle at repossession and "hold same for buyer at buyer's risk without liability on the part of the seller." Appellants contend that this provision waives the buyer's right to sue for conversion, or at least can be interpreted as a waiver of buyer's rights of action against seller for the acts of the seller which damage buyer's

property. They argue that the Code must be construed liberally to effect its purpose and cite several cases for this contention. *Southwestern Investment Co. v. Mannix, supra; Ford Motor Credit Co. v. Blocker,* 558 S.W.2d 493 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.; *O. R. Mitchell Motors, Inc. v. Bell,* 528 S.W.2d 856 (Tex. Civ.App.—San Antonio 1974, writ ref'd n. r. e.).

We determine that even reading the statute broadly to effectuate its intent, this provision does not violate article 5069–7.-07(4). The "Declaration of Legislative Intent" in Section 1 of the Code discusses consumers who are being "victimized and abused," "unscrupulous operators, lenders and vendors," and consumers with "intolerable burdens." We conclude that even if the Code is construed most strongly in favor of the consumer, it does not invalidate any provision of the GMAC contract. No provision of that contract expressly waives any of the buyer's rights of action for illegal acts of the seller during repossession. It is unclear what acts of the seller are intended to be covered by the term "illegal acts." Even if this expression is taken to include negligent acts, this contract cannot reasonably be construed to waive liability for seller's negligent acts. To be effective for that purpose, an express waiver of liability for negligence would be required. *See Allbright Inc. v. Elledge,* 515 S.W.2d 266, 268 (Tex.1974); *K & S Oil Well Service, Inc. v. Cabot Corp. Inc.,* 491 S.W.2d 733, 739 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.).

■ We cannot agree that a contract is illegal merely because it is susceptible to an interpretation that violates the Code. While appellants' cited cases assert the rule that sellers and creditors have a strict duty to see that their contracts comply with the Consumer Credit Code, the violations in those cases were clear. In *Bell,* the only violation affirmed by the court was not challenged, and in *Blocker,* the parties stipulated to the violation. Here, we have a contract provision which can be more reasonably construed to comply with the Code, and we so construe it. While we are sympathetic to the unequal bargaining power of the "uneducated, the unsophisticated, the poor and the elderly" in consumer credit transactions, article 5069–7.07(4) prohibits only contractual provisions waiving liability for *illegal* acts of the seller. We hold that paragraph six does not violate the Consumer Credit Code because we do not believe this contract would be likely to mislead even an unsophisticated buyer by giving the false impression that he had waived any rights of buyer against seller for seller's illegal acts.

Affirmed.