**Morad MEKHAIL d/b/a Abtrust, Appellant,**

v.

**DUNCAN–JACKSON MORTUARY, INC. f/k/a Jackson Mortuary, Inc., Appellee.**

No. 01–11–00485–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 1, 2012.

Rehearing Overruled May 2, 2012.

Joseph G. Soliz, The Soliz Law Firm, Joseph H. Pedigo, Houston, TX, for Appellant.

Anthony W. Nims, Linebarger Goggan Blair & Sampson, L.L.P., Richard L. Spencer, Daniel Wilson, Johnson DeLuca Kurisky & Gould, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BROWN.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Morad Mekhail d/b/a Abtrust, appeals the trial court's grant of summary judgment in favor of appellee, Duncan–Jackson Mortuary, Inc. f/k/a Jackson Mortuary, Inc., setting aside a tax sale of Duncan–Jackson Mortuary's property. In five issues, Mekhail argues (1) payment of an amount less than the amount of the earlier judgment did not render the tax sale null and void, especially when the payment was not received until after the tax sale; (2) the legal principal of "substantial compliance" does not apply to the relevant statute; (3) Duncan–Jackson Mortuary's payment by e-check was not a sufficient mode of payment; (4) the trial court erred in granting Duncan–Jackson Mortuary's motion for summary judgment; and (5) the trial court erred in denying his motion for summary judgment.

We reverse and remand for rendition of a take-nothing judgment.

## Background

At all relevant times prior to February 16, 2010, Duncan–Jackson Mortuary owned the property at issue in this appeal. On February 16, Harris County, on behalf of itself and seven other taxing authorities, obtained a default judgment against Duncan–Jackson Mortuary for delinquent taxes owed on the property. The judgment awarded Harris County $16,961.30 in taxes, penalties and interest, and research fees. The judgment set an interest rate of 1% on the base tax amount starting from February 1, 2010. The record reflects that the amount of interest accrued as of July 2, 2010 was $522.10. The judgment also awarded all court costs ($761.00 as of July 2, 2010), $110 for costs of service of process, and $35 for a Tax Master Fee. As of July 2, the total amount owed under the judgment was $18,389.40.

An order of sale on the property was issued on April 21, 2010. A constable's sale was set for Tuesday, July 6, 2010. Duncan–Jackson Mortuary was notified of the final judgment approximately four and one-half months prior to the sale and received notice of the date of the sale approximately 25 days prior to the sale.

On Friday, July 2, 2010, Duncan–Jackson Mortuary submitted an electronic payment to the Harris County Tax Assessor-Collector through its website. It paid $17,483.40, based on the Delinquent Property Tax Statement for the property. The statement showed the total amount, if paid in July 2010, to be $17,483.40. This is equal to the amount of the taxes, penalties, and interest plus the interest on the taxes reflected in the judgment. This amount does not include the court costs, service of process fee, and Tax Master Fee that were also included in the judgment.

The parties dispute when the payment was actually received by Harris County. Regardless, the tax sale proceeded on July 6. Mekhail was the highest bidder for the property and received a constable's deed for the property.

On August 5, 2010, Duncan–Jackson Mortuary initiated the underlying lawsuit,

arguing that the tax sale should be set aside based on its July 2 payment. Mekhail answered. Harris County answered, but did not otherwise participate in the litigation.

Ultimately, Duncan–Jackson Mortuary and Mekhail filed competing motions for summary judgment arguing whether the evidence established as a matter of law that the tax sale could be set aside. The trial court ultimately found in favor of Duncan–Jackson Mortuary and set aside the tax sale. Mekhail brought this appeal.

### Setting Aside Tax Sale

In his first issue, Mekhail argues the trial court erred by setting aside the tax sale because Duncan–Jackson Mortuary did not pay the full amount of the judgment and did not pay it before the date of the tax sale.

### A. Standard of Review

We review a trial court's granting of a summary judgments de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). Summary judgment is properly granted only when a movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). As must the trial court, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). When an order granting summary judgment does not specify the grounds upon which the trial court ruled, we must affirm if any of the summary judgment grounds is meritorious. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

When, as here, both parties file motions for summary judgment and the trial court grants one motion and denies the other, we determine all presented questions and may render a different judgment if appropriate. *SAS Inst., Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex.2005); *CU Lloyd's v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998). Each party must carry its own burden, both as movant and in response to the other party's motion, as nonmovant. *State v. Japage P'ship,* 80 S.W.3d 618, 620 (Tex. App.-Houston [1st Dist.] 2002, pet. denied) (citing *CU Lloyd's,* 977 S.W.2d at 569).

### B. Analysis

Section 34.08 of the Texas Tax Code allows a party to file an action challenging the validity of a tax sale. TEX. TAX CODE ANN. § 34.08 (Vernon 2008). Duncan–Jackson Mortuary brought its action to set aside the tax sale, arguing that its payment to Harris County on July 2 rendered the tax sale on July 6 invalid based on section 33.53 of the Tax Code. *See* TEX. TAX CODE ANN. § 33.53 (Vernon 2008).

Duncan–Jackson Mortuary's and Mekhail's motions for summary judgment argue two sides of the same issue: whether, under authority of section 33.53, Duncan–Jackson Mortuary was entitled to have the tax sale set aside. Under subsection (e) of the section 33.53,

> (e) If the owner pays the amount of the judgment before the property is sold, the taxing unit shall:
>
> (1) release the tax lien held by the taxing unit on the property; and
>
> (2) file for record with the clerk of the court in which the judgment was rendered a release of the lien.

*Id.* § 33.53(e).

Duncan–Jackson Mortuary acknowledges that it did not pay the full amount of the judgment ($18,389.40) prior to the tax sale. Strictly speaking, then, it has not satisfied the requirement of subsection (e).

Duncan–Jackson Mortuary argues it should nevertheless be entitled to set aside the tax sale based on either of two legal principles: (1) *de minimis non curat lex* and (2) substantial compliance.

Neither of these legal principles has been previously applied to section 33.53. We must determine, then, whether either of these principles applies.

### 1. De Minimis Non Curat Lex

■ *De minimis non curat lex* is an infrequently used legal theory that "the law does not care for, or take notice of, very small or trifling matters." *Green v. Parrack*, 974 S.W.2d 200, 206 (Tex.App.-San Antonio 1998, no pet.). The principle applies to very small amounts of money. *See Phillips v. Parrish*, 814 S.W.2d 501, 506 (Tex.App.-Houston [1st Dist.] 1991, writ denied) (holding five dollar calculation error is *de minimis*); *Jones–Holt Enters., Inc. v. Hips*, 643 S.W.2d 773, 776 (Tex. App.-San Antonio 1982, no writ) (holding four dollar loss is *de minimis*); *Thornhill v. Sharpstown Dodge Sales, Inc.*, 546 S.W.2d 151, 153 (Tex.Civ.App.-Beaumont 1976, no writ) (holding 42 cent overcharge is *de minimis*). The principle does not apply, however, just because the number complained of is small. *Green*, 974 S.W.2d at 206 (holding 21 inch encroachment on property that is sixty-seven feet wide is not *de minimis*). The law is invoked to excuse negligible deviations from the letter of the law. *Id.*

■ Here, while Duncan–Jackson Mortuary paid the taxes, penalties, and interest plus the interest on the taxes reflected in the judgment, it did not pay the court costs, service of process fee, and Tax Master Fee that were also included in the judgment. The unpaid amount, as of July 2, was $906. We hold that this is not a *de minimis* amount.

### 2. Substantial Compliance

■ " 'Substantial compliance' means one has performed the 'essential requirements' of a statute. The term has been applied to excuse deviations from a statutory requirement if such deviations do not seriously hinder the legislature's purpose in imposing the requirement." *J.C. Evans Constr. Co., Inc. v. Travis Cent. Appraisal Dist.*, 4 S.W.3d 447, 451 (Tex.App.-Austin 1999, no pet.) (citing *Mo. Pac. R.R. Co. v. Dallas Cnty. Appraisal Dist.*, 732 S.W.2d 717, 721 (Tex.App.-Dallas 1987, no writ)). Substantial compliance is "determined on a case by case basis, depending in part on the size of the amount paid timely, the size of the amount left unpaid by the [deadline], and the promptness of the late payment." *Harris Cnty. Appraisal Dist. v. Dipaola Realty Assocs.*, 841 S.W.2d 487, 490 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

■ The principle of substantial compliance has been applied to two statutes in the Tax Code: sections 34.21 and 42.08. *See* Tex. Tax Code Ann. §§ 34.21, 42.08 (Vernon Supp.2011); *see, e.g., Page v. Burk*, 582 S.W.2d 512, 514 (Tex.Civ.App.-Dallas 1979, no writ) (applying substantial compliance to section 34.21); *J.C. Evans Constr.*, 4 S.W.3d at 451 (applying substantial compliance to section 42.08). Neither of these applications of the substantial compliance doctrine persuades us to apply that doctrine to section 33.53(e).

Chapter 42 of the Tax Code generally concerns appeals by property owners of the values imposed on property by various taxing authorities. *See* Tex. Tax Code Ann. §§ 42.01.43 (Vernon 2008 & Supp.2011). Section 42.08 requires a property owner to pay taxes on the property before the delinquency date in order to maintain the right to judicial review. *Id.* § 42.08(b). The statute specifically incorporates the concept of substantial compliance in a deter-

mination of whether the party has forfeited its right to judicial review.[1] *Id.* § 42.08(d). Chapter 42 does not apply to actions to set aside a tax sale.

Section 34.21 concerns a property owner's right to redeem the property after it has been purchased at a tax sale. *Id.* § 34.21. While it does not specifically mention substantial compliance, there are a number of factors that justify its application.

First, it has been the practice in Texas since at least 1909 to liberally construe redemption statutes in favor of redemption. *Jackson v. Maddox*, 53 Tex.Civ.App. 478, 480, 117 S.W. 185, 185 (Tex.Civ.App.-Fort Worth 1909, no writ) (holding "law authorizing the redemption of *lands sold* ought to receive a liberal and benign construction in favor of those whose estates will be otherwise devested"); *Rogers v. Yarborough*, 923 S.W.2d 667, 669 (Tex. App.-Tyler 1996, no writ). This longstanding practice weighs in favor of not strictly construing the requirements of the statute and, instead, of weighing multiple factors to determine whether the payment was sufficient to avoid "seriously hinder[ing] the legislature's purpose in imposing the requirement." *See J.C. Evans Constr.*, 4 S.W.3d at 451.

Second, the statute acknowledges and provides for certain ambiguity in the amount that must be paid. In order to redeem property under the statute, the property owner must pay, among other things, "costs on the property." TEX. TAX CODE ANN. § 34.21(a), (b)(1), (c). Costs are defined to include "the amount reasonably spent by the purchaser for maintaining, preserving, and safekeeping the property." *Id.* § 34.21(g)(2)(A). A determination of what constitutes an "amount *reasonably* spent by the purchaser" can be a disputed and subjective determination. Moreover, it is not information that will always be readily available to the original owner. To this end, the statute allows the original owner to seek a statement of costs from the purchaser. *Id.* § 34.21(i). If a dispute does arise as to what is owed, the original owner can redeem the property by making a certain payment to the county tax assessor-collector along with an affidavit including specified representations. *Id.* § 34.21(f).

The statute does not contain clear and precise requirements that would allow for a strict construction of its application. Because certain matters in the statute are subjective and readily subject to dispute, it follows that a practice of determining whether the original owner has substantially complied with the statute becomes necessary.

We turn now to determining whether a similar justification exists to apply a substantial compliance analysis is warranted for payments made under section 33.53. It is important to note that Duncan–Jackson Mortuary did not attempt to redeem the property subject to section 34.21 after the sale, did not argue that any of its actions in filing the suit constituted an attempt to redeem the property post-sale, and did not argue in its motion for summary judgment that section 34.21 applied to it. Accordingly, Duncan–Jackson Mor-

---

1. Specifically, section 42.08 provides, in pertinent part:

   If the court determines that the property owner has not substantially complied with this section, the court shall dismiss the pending action. If the court determines that the property owner has substantially but not fully complied with this section, the court shall dismiss the pending action unless the property owner fully complies with the court's determination within 30 days of the determination.

   TEX. TAX CODE ANN. § 42.08(d) (Vernon Supp. 2011).

tuary cannot and does not argue in this appeal that it is entitled to a substantial compliance analysis under section 34.21. Instead, it argues that it is entitled to a substantial compliance analysis because a payment of money owed under section 33.53 is analogous to a payment of money owed under section 34.21. We disagree.

First, we note that there is no corresponding historical practice of liberally construing section 33.53 or its predecessors despite the equally long existence of pre-sale requirements. *See* Act approved April 13, 1895, 24th Leg., R.S., ch. 42, § 13, 1895 Tex. Gen. Laws 50, 53, *reprinted in* 10 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 780, 783 (Austin, Gammel Book Co. 1898).[2]

Second, we do not note any similar ambiguity in the money that must be paid. The statute requires the owner to "pay the amount of the judgment." TEX. TAX CODE ANN. § 33.53(e). Duncan–Jackson Mortuary argued in its motion for summary judgment, "The full costs adjudged against the property were not finally determined nor known to Plaintiffs until after August 10, 2010, when the abstract of judgment prepared on behalf of the Taxing Authorities was filed." It offers no explanation for this argument, however.

Duncan–Jackson Mortuary was required to pay the amount of the judgment. *Id.* It follows, then, that the amount owed is determinable by looking at the judgment. The only cost assessed in the judgment that was not specifically stated or calculable based on information wholly contained within the judgment was the court costs. That information was publicly available and readily ascertainable from the Harris County District Clerk. Moreover, Duncan–Jackson Mortuary was notified of the final judgment approximately four and one-half months prior to the sale and received notice of the date of the sale approximately 25 days prior to the sale. Duncan–Jackson Mortuary does not claim that it was prevented from obtaining a copy of the judgment and a list of court costs from the district clerk. This information is not subject to dispute.

Third, as we have noted above, substantial compliance is "determined on a case by case basis, depending in part on the size of the amount paid timely, the size of the amount left unpaid by the [deadline], and the promptness of the late payment." *Dipaola Realty Assocs.*, 841 S.W.2d at 490. Subsection (e) of section 33.53 mandates that the taxing unit release the tax lien held on the property and file the release of lien when the judgment has been paid before the property is sold. TEX. TAX CODE ANN. § 33.53(e). If this mandate was subject to case-by-case review, this would inject unnecessary uncertainty into the process. Because the substantial compliance review is based on balancing a number of factors, the taxing unit would have no clear guidance on when it can proceed with a tax sale when some, but not all, of the judgment has been paid.[3] This would "seriously hinder the legislature's purpose in imposing the requirement" that the entire judgment be paid before the taxing authority is obligated to release the lien. *See J.C. Evans Constr.*, 4 S.W.3d at 451.

Additionally, if we were to adopt the construction urged by Duncan–Jackson Mortuary, part of the judgment would be at risk of never being paid. If substantial

---

**2.** Accessed through the University of North Texas Libraries, The Portal to Texas History, http://texashistory.unt.edu/ark:/67531/metapth6733 (last accessed February 28, 2012).

**3.** Naturally, nothing prevents the taxing authority from electing to cancel or postpone the tax sale. Our analysis is limited to whether the taxing authority is required to cancel or postpone the tax sale.

compliance satisfies section 33.53(e), the taxing authority would be required to release its lien and would have no means to enforce collection of the unpaid portion of the judgment—here over $900.

Finally, a strict compliance rule would not create any harsh effects, because if a property owner pays some, but not all, of the judgment prior to a tax sale, the owner can still redeem the property after the tax sale. *See* TEX. TAX CODE ANN. § 34.21. Even if there is some ambiguity in the judgment that cannot be resolved prior to the tax sale, the property owner can address that ambiguity in a redemption proceeding, where the substantial compliance principle applies.

We hold that the principle of substantial compliance does not apply to subsection (e) of section 33.53. Because it did not pay the full amount owed under the judgment, Duncan–Jackson Mortuary was not entitled to have the tax sale set aside. Accordingly, we sustain Mekhail's first issue.

In his fifth issue, Mekhail argues that the trial court erred in denying his motion for summary judgment, which argued that Duncan–Jackson Mortuary was not entitled to have the tax sale set aside because it had not paid the full amount owed under the judgment. For the same reasons cited above, we sustain this issue.

Because they would not provide him with any greater relief, we do not need to reach Mekhail's remaining issues. *See* TEX.R.APP. P. 47.1 (requiring appellate opinions to address every issue raised and *necessary* to final disposition of appeal).

### Conclusion

We reverse the judgment of the trial court and remand for entry of a take-nothing judgment.